# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP CAREY PAPPAS, | 1:05-CV-00857 LJO JMD |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on November 27, 1990, of second degree murder in violation of Cal. Penal Code § 187.  See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. Petitioner was sentenced to fifteen-years-to-life.  Id.  Petitioner's conviction was affirmed on appeal.  See Pet. Exh. C.

On March 18, 2004, Petitioner's second parole suitability hearing was held before the

Board of Parole Hearings (hereinafter "Board"). See Answer, Exh. 2. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for five years. Id. at 130.

Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court on June 23, 2004, which was denied on August 11, 2004, in a reasoned opinion. See Answer, Exh. 3, 4. He then filed a habeas petition in the California Court of Appeals, on August 31, 2004. See Answer, Exh. 5. The petition was summarily denied on September 2, 2004. See Answer, Exh. 6. On September 10, 2004, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exh. 7. On November 17, 2004, the petition was summarily denied. See Answer, Exh. 8.

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 23, 2005. The Petition challenges the 2004 decision of the Board denying parole. Petitioner contends the decision violated his constitutional rights under the Fifth and Fourteenth Amendments in that the decision of the Board was not supported by any evidence.

On July 2, 2007, Respondent filed its Answer to the Petition. Petitioner filed a Traverse on November 21, 2007.

## FACTUAL BACKGROUND[1]

On December 16, 1989, police officers responded to an emergency call at the apartment where Petitioner and his wife lived. Upon arriving at the apartment complex, as they came through a hallway they saw Petitioner exit a stairwell. Petitioner paused briefly, then ran up to the officers screaming, "my wife, she's not breathing." Petitioner stated that his wife had fallen down a set of stairs.

The officers entered the apartment and saw Mrs. Pappas lying on the floor while Gruenenfelder, a neighbor, attempted C.P.R. Officer Miller could hear no breathing and found no pulse. She requested an ambulance over her radio while Officer Scott wiped dry blood from Mrs. Pappas' mouth. The victim's clothing and hair were wet.

---

[1] The information is taken from the factual summary as set forth by the California Court of Appeals in its opinion affirming the conviction. See Petition, Exh. C at 3-15.

The paramedics arrived and began to treat Mrs. Pappas. When they lifted her head off the floor, Officer Miller noticed blood underneath her head. When the paramedics removed Mrs. Pappas' blouse, Officer Miller noticed numerous large bruises on her arm and on both sides of her shoulders. One paramedic saw injuries inconsistent with a fall down the stairs, including a second degree burn on Mrs. Pappas' chest about the size of a hand, as well as deep purple bruises at her joints, on her shoulders and on her legs.

Another paramedic noticed Mrs. Pappas had received blunt trauma, meaning she had been hit with some object on her joints, shoulders, elbows and knees. The paramedics also noticed additional burns on the victim's chest which appeared to be cigarette burns.

Mrs. Pappas regained a heart rhythm and pulse and was transported to the hospital. Her treating physician testified she was suffering from shock and her blood pressure was extremely low. The doctor noticed Mrs. Pappas had bruising throughout her body and that areas of her skin appeared to be burned and blistered. Shortly after arriving at the hospital, Mrs. Pappas went into cardiopulmonary arrest and died.

At some point while on the scene, the responding officers noticed Petitioner was no longer in the apartment, and they broadcast a message to search for him. The apartment complex's janitor had noticed a man with the same build and hair color as Petitioner walking down the steps to the apartment's garage carrying two gym bags. Officer Dunn responded toe the police broadcast and located Petitioner walking nearby the apartment complex. Petitioner was nearly hysterical. Officer Dunn placed Petitioner in handcuffs for "safety reasons" and took him to the police station. En route to the police station Petitioner indicated his wife's injury was an accident. He claimed she was standing at the top of the stairs, stated she felt sick and then fell down the staircase.

Shortly after being placed in a holding cell at the police station, Petitioner collapsed and complained of chest pain and shortness of breath. Petitioner was taken to St. Joseph's Hospital. At the hospital, Petitioner told Officer Dunn he and his wife were happy. He reiterated that his wife was sick and fell down the staircase. He claimed he tried to put his wife in a chair but she fell over and collapsed, breaking the back of the chair. He also claimed his wife had been

1   mugged two days before and that she had been badly beaten.

2       Petitioner later reiterated to police that his wife had been mugged two days before her
3   death, and that she was ill at the time she died.  He said that after she fell down the stairs, he
4   picked her up and placed her in a chair in the dining room.  She then came to the kitchen, got
5   dizzy and knocked a pan of hot water off the stove drenching her clothes.  She then vomited into
6   a trash can, got dizzy and fell out of the chair breaking it.  She again vomited where she had
7   fallen on the carpet.  At that point Petitioner called for help.

8       Officer Barnes, the primary investigating officer, examined Petitioner's apartment for
9   evidence of a struggle.  He noticed blood stains on the carpet, the telephone, and on the dining
10  room table.  On the kitchen stove was a two-quart pan filled about half-way with water.  Officer
11  Barnes found no evidence of vomit.  The officer found no signs of a struggle or injury on the
12  staircase.  In the upstairs bathroom Officer Barnes found blood stains on one of the cabinet doors
13  and on the handle of a plunger in the bathroom.  The doorjamb of the bathroom had a large
14  indentation, and wood chips matching the paint of the doorjamb were found on the bathroom
15  floor and in the bedroom.  A blood stain was found on the wall approximately one foot from the
16  indentation, about five feet off the floor.  Blood stains were also found on the bed comforter and
17  on a pillow.  A soaking wet pair of blue jeans were found as well.  Nothing was found in the
18  apartment identifying its occupants.

19      One of Petitioner's vehicles, missing from the apartment's parking garage, was located
20  from a parking garage of another apartment complex two blocks away.  In the car police
21  discovered two gym bags.  The bags contained Mrs. Pappas' purse, her wallet, her identification,
22  six men's shirts, mail and miscellaneous papers, 27 credit cards, two drivers licenses with
23  Petitioner's picture, a large 5 or 6 cell flashlight and a smaller flashlight.

24      The following day Petitioner was transferred to the hospital's prison ward.  En route,
25  Petitioner asked if he could get a bond to post bail.  The officer accompanying Petitioner
26  explained there was no bond for murder.  Petitioner responded, "It wasn't premeditated murder,
27  it was an accident.  I tired to save her."

28      On December 18, 1989, Officer Barnes spoke with Petitioner regarding the items

recovered from Petitioner's car.  Petitioner claimed his statement to detectives at the scene was the complete truth.  Officer Barnes stated that the evidence at the scene and evidence of Petitioner fleeing the scene were inconsistent with his explanation that Petitioner's wife had fallen down the stairs.  Petitioner responded, "Look, me and my wife had an argument; it was an accident, it wasn't premeditated."  Petitioner requested a lawyer before he would speak further, and all questioning ceased.

The doctor performing Mrs. Pappas' autopsy found that her injuries were unlikely to have been caused by a single fall down a staircase.  He concluded her death was caused by swelling of the brain due to blunt force trauma to the head.

## DISCUSSION

### I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective

1  Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63,
2  70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
3  adjudication of the claim "resulted in a decision that was contrary to, or involved an
4  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
5  of the United States" or "resulted in a decision that was based on an unreasonable determination
6  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
7  § 2254(d); see <u>Lockyer</u>, 538 U.S. at 70-71; see <u>Williams</u>, 529 U.S. at 413.
8    As a threshold matter, this Court must "first decide what constitutes 'clearly established
9  Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,
10 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
11 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
12 of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other
13 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
14 principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.
15   Finally, this Court must consider whether the state court's decision was "contrary to, or
16 involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at
17 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
18 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
19 Court on a question of law or if the state court decides a case differently than [the] Court has on a
20 set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; see also <u>Lockyer</u>, 538 U.S.
21 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
22 state court identifies the correct governing legal principle from [the] Court's decisions but
23 unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at
24 413.
25   "[A] federal court may not issue the writ simply because the court concludes in its
26 independent judgment that the relevant state court decision applied clearly established federal
27 law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411.
28 A federal habeas court making the "unreasonable application" inquiry should ask whether the

state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**II.      Review of Petition**

**Standard of Review**

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,'

unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added). The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, ___ F.3d ____, 2008 WL 43716 *5 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 2008 WL 43716 *5, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 2008 WL 43716 *5, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

**Analysis**

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was represented by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exh. 2.

Petitioner, however, contends the Board's decision was arbitrary, capricious and had no evidentiary support. After reviewing all relevant evidence, the Court finds that the state court rejection of Petitioner's claims was not unreasonable, because the Board's decision is supported by "some evidence."

In denying parole in this case, the Board provided several reasons for its decision: 1) The nature and gravity of the commitment offense; 2) Previous criminal history; 3) Unstable social history; 4) Behavior while incarcerated; and 5) Opposition by the Los Angeles District Attorney's Office, the victim's next of kin, and others. See Answer, Exhibit 3 at 119-129. Petitioner disputes this finding and argues that there is no evidence supporting the finding that he currently poses an unreasonable risk of danger to society if released. Review of the Board's decision reveals that the state court decision approving the Board's determination of unsuitability was not unreasonable.

The primary factor in the Board's determination was the nature and severity of the commitment offense itself. The Board determined that the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2402(c)[2]. In support of its

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

determination, the Board made a positive finding as to the factor set forth in § 2402(c)(1)(C), that the victim was abused, defiled or mutilated during or after the offense. See Answer, Exhibit 2 at 119. In support of this finding, the Board noted that the victim was abused, beaten by Petitioner. Petitioner struck the victim numerous times; this beating was the cause of her death. Id. at 119-120.

The Board also found that the offense was carried out in a manner demonstrating an exceptionally callous disregard for human suffering pursuant to § 2402(c)(1)(D). Id. at 119. This finding is supported by the fact that Petitioner struck the victim numerous times, causing blunt force trauma to her head leading to death by asphyxiation. Id. at 119-120.

The Board also determined that the motive for the crime was very trivial in relation to the offense pursuant to § 2402(c)(1)(E). Id. at 119. The Board noted that Petitioner and victim were involved in a verbal altercation which escalated to a physical altercation, at which time Petitioner struck the victim numerous times, causing the aforementioned blunt force trauma. .Id. In light of the above, the Board reasonably found the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2402©.

In addition to the factors of the crime itself, the Board also determined that Petitioner had a previous record of violence pursuant to § 2402(c)(2) and an unstable social history pursuant to § 2402(c)(3). Id. at 120-125. As to his record of violence, the Board noted Petitioner had failed to profit from society's previous attempts to correct his criminality. Id. at 120-121. The Board found previous attempts to correct Petitioner's criminality included adult probation, two prior prison terms, and parole. Id. Petitioner previously served a term in prison following his arrest in 1975 for child endangerment. In that instance, Petitioner inflicted numerous bruises, swollen lips, and about 25 severe burns to the lower body and penis of a six-year-old victim. Id. at 120. The Board found previous attempts to correct Petitioner's criminality included adult probation, two prior prison terms, and parole. Id. Petitioner received probation in Texas in 1981 for credit card abuse. While on probation he again engaged in theft and credit card abuse, for which he was sentenced to four years in prison. He had an arrest in 1988 for battery, resulting from an altercation with his brother in a movie theater. The Board noted that Petitioner admitted that

subsequent to his prison term for credit card abuse he continued to attempt credit card fraud. Id. at 121.

The Board also noted Petitioner has a history of unstable or tumultuous relationships with others, including the relationship he had with the mother of the six-year-old child that he abused and endangered, a prior marriage, the fight with his brother, the death of his wife, and a marriage that lasted an extremely short time occurring after he was in prison. Id. at 126.

The Board also noted that Petitioner sustained two 115 disciplinary reports since his last hearing in 1988 – one in December of 2000 for being out of bounds, and one in November of 2003 for refusing a direct order. Id. at 122. In addition, Petitioner received a 128A counseling chrono in 2001 for argumentative and disrespectful behavior towards staff. Id. The Board also noted a number of previous 128 chronos dating from 1992 forward.

In addition, the Board expressed concern that during the hearing Petitioner attempted to take responsibility for the death of his wife without saying that he beat her to death. Id. at 128. Moreover, the Board found troubling Petitioner's claim of innocence regarding his prior conviction for child endangerment, as well as his claims that almost every discipline he received while in prison was unwarranted and part of a conspiracy against him. Id.

The Board also considered the opposition of the Los Angeles County District Attorney's Office. Id. at 124. The agency was opposed to a grant of parole due to the heinous nature of the offense. The statement in opposition was properly considered pursuant to Cal. Penal Code § 3042 and 15 C.C.R. § 2402(b). In addition, the Board noted the opposition of the victim's next-of-kin and a 711 signature petition opposing parole. Id.

The Board also considered the most recent psychological report which was favorable. Id. at 122-23. The psychologist noted that in his opinion Petitioner currently posed a low degree of threat if released to the community. Id. The Board found the report inconclusive, as it did not speak of the prior prison term for abuse of a child. Id. at 126.

The Board also considered the various circumstances demonstrating suitability pursuant to § 2402(d). The Board noted Petitioner had programmed in a sufficient manner. Id. at 122. However, the Board stated that Petitioner needs to be involved in a victim's impact class. Id. at

126. As noted above, the Board also considered the favorable psychological report. Id. It also noted Petitioner had viable parole plans, including a place to reside, viable skills and the ability to reinstate himself in his union. Id. at 123-124.

Nevertheless, the Board found these positive factors, while promising for a possible future grant of parole, did not outweigh its determination that Petitioner remained an unreasonable risk of danger to society if released. The gravity of Petitioner's offense, his prior record of violence and recidivism, his unstable social history, and his behavior while incarcerated, despite his positive gains to date, were more indicative of a danger to the public. Given these facts, the Board's determination that Petitioner continued to pose an unreasonable risk of danger to the public if released was understandable. This Court cannot conclude that the state court rejection of Petitioner's claim – that the Board's determination was not supported by some evidence – was unreasonable.

**Other Claims**

In addition to claiming the decision of the Board was not supported by "some evidence," Petitioner alleges the state courts failed to afford him proper due process under state law in denying his petition. See Petition at 7. This ground alleges violations of state law which are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law.).

Petitioner also claims the state courts failed to apply the correct legal standard in reviewing his claim. California courts review habeas petitions based on denial of parole under the "some evidence" standard articulated in In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002). This is the same standard adopted by the Ninth Circuit. See, Sass, 461 F.3d at 1129; McQuillion, 306 F.3d at 904; see also Hill, 472 U.S. at 457. As the state courts applied the correct legal standard,

1 Petitioner's claim is without merit.

2 Petitioner also claims the Board is operating under an illegal policy denying parole to all prisoners. See Petition at 7, n.1, 14-15. The claim is conclusory and unsupported by any evidence.[3] See Allard v. Nelson, 423 F.2d 1216, 1217 (9th Cir.1970) (Conclusory allegations in a habeas petition fail to state a claim and do not suffice to shift the burden to the state to answer an order to show cause.); James v. Borg, 24 F.3d 20, 29 (9th Cir.1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief). In addition, there is no indication that the Board did anything but carefully consider each factor in evaluating Petitioner at his initial parole release hearing.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be ENTERED in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court

---

[3] Petitioner relies on Coleman v. Board of Prison Terms, 2005 U.S. Dist. LEXIS 30826 (E.D. Cal., Dec. 2, 2005) in support of his claim that during the Wilson and Davis administrations, the Board adopted an unconstitutional "no parole" policy. Petitioner's reliance on Coleman is misplaced. In reversing this decision, the Ninth Circuit explicitly stated that Coleman cannot be used for non-mutual collateral estoppel. Coleman v. Board of Prison Terms, 2007 WL 1073774 (9th Cir. Cal).

1  and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate
2  Judge's Findings and Recommendations."  Replies to the objections shall be served and filed
3  within ten (10) court days (plus three days if served by mail) after service of the objections.  The
4  Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The
5  parties are advised that failure to file objections within the specified time may waive the right to
6  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
7  IT IS SO ORDERED.

**Dated:   April 9, 2008**                           **/s/ John M. Dixon**
                                         UNITED STATES MAGISTRATE JUDGE